and you must be Ms. Graff. That's correct. Well, I don't have to ask if you're ready to proceed. I'm ready. All right. You may. May it please the court. Jessica Graff from the Federal Public Defender's Office for Appellant Mitesh Patel. This case is about applying the correct, consistent definition of the term crime of violence across the United States sentencing guidelines. There are two reasons why this court should reverse and remand to the district court. First, the categorical approach applies to determine whether an offense is a crime of violence under Section 7B1.1a, and Mr. Patel's assault offense categorically does not qualify. And second, the district court's error was not harmless and warrants remand. Turning to my first point, the Supreme Court and this court have uniformly applied the categorical approach to the enumerated offense clause and the force clause, no matter where they are found, whether in a statute or in the sentencing guidelines. Section 7B1.1 is no different, and that is clear from the plain language of the text. A grade A violation is conduct constituting a federal, state, or local offense that is a crime of violence. While the commentary makes clear that conduct means the defendant's actual conduct, crime of violence is the same 4B1.2 definition that instructs courts to analyze the offense's elements. That triggers the categorical approach, and the actual conduct language does not render the categorical approach moot. As the First, Third, Fourth, and Ninth Circuits have recognized, the actual conduct language is there because 7B1.1 does not require an actual prosecution or conviction. A person can violate their terms of supervised release without ever receiving a new charge. So courts are supposed to look at the defendant's actual conduct in order to identify the federal, state, or local offense that the defendant violated or committed that violated the terms of supervised release. But once that offense is identified, 7B1.1 directs the courts to apply the 4B1.2 crime of violence definition, and that definition, no matter where it is, calls for the categorical approach. So by incorporating 4B1.2, 7B1.1 also requires courts to look at the elements. Now, if the court were only supposed to look at actual conduct and determine whether the defendant used force, the federal, state, or local offense language in the text would be meaningless. But by instructing courts to identify an actual statutory offense, it then, again, triggers the categorical approach and that element's analysis. And if the Sentencing Commission had only intended for courts to look at actual conduct, what they could have said is, a grade A violation is whenever the defendant used physical force against another, instead of incorporating 4B1.2 and all of the connotations that go with it. Now, this court has already held that Mr. Patel's assault offense is not a crime of violence. So the district court, in this case, should have applied a grade B violation. Let's assume you're right, that the court should have applied a grade B violation under the categorical approach. And so we conclude that that was error. Why wasn't that error harmless? Your Honor, because there are no magic words that de facto inoculate this court's review of legal issues. Instead, this court has always looked at the record as a whole, as part of its harmless error analysis. For example, in United States v. Rico Mejia, this court looked at the record as a whole, and despite the fact that the district court said it had considered the party's arguments, which included an overruled PSR objection, and would impose the same sentence, this court was not convinced that that sentence was uninfluenced by the erroneous guideline calculation. And the great weight of the record here shows that the policy statement clearly drove the district court's sentencing determination. We can see that the judge thought that this issue was important, and wanted to get the policy statement range right because it matters. We can see that on page 85 of the record, where the judge told the government, I am concerned about this crime of violence argument. Also, on page 96 of the record, defense counsel indicated that he was glad there was no appeal waiver in this case, so that we could get some direction from this court, and the district court agreed. She said, yes, this issue is extremely important. The judge also indicated multiple times that she wanted guidance from this court, and on this particular issue, and that she expected an appeal in this case. On page 95 of the record... Counsel, doesn't she calculate it under both, and then say this would be the sentence anyway? Why is that, why does that not bring this into the realm of harmless error, if we were to agree with your first point? Because she does, at the very end, state that she would give the same sentence if it were grade A or grade B, but all of the record prior to that shows that she considered this issue to be very important, and her statement itself about when she gave the sentence, on page 119 of the record, she said that the court has consulted the appropriate guidelines and the appropriate policy statement, and determined that 18 months is sufficient, but not more than sufficient, so her only statement about the sentence itself was tying it to the policy statement range. There is nothing about that 18-month sentence or her explanation that tethers it to anything except for the policy statement. She also indicated multiple times that she wanted this court to review this particular issue. She said on page 95 of the record, the way we get good law is taking it up and arguing it. I'm not sure what the Fifth Circuit will think about this, but I'm sure we'll find out. On page 96 of the record, she said this is prime red meat for SCOTUS. And then on multiple occasions, pages 97, 98, 105, 120, and 123, she affirmed multiple times that the issue was properly preserved for appeal, and she agreed on page 98 of the record that it was important for her ruling to be clear in order for this court to consider it on appeal. Even in cases where this court has found that the district court's inoculation statement was sufficient for harmless error, cases like Richardson and Duhon, the court still analyzed the record as a whole, and it was more than just one statement that inoculates against appellate review. In Richardson, the district court gave extensive 3553A analysis about its ultimate sentencing determination. And in Duhon, the court gave a downward variance and gave extensive explanation for that. So it's never been, in this court's analysis, only one statement, but rather a comprehensive review of the record as a whole and whether this court believes that the sentence was in fact uninfluenced by the guidelines. And the record as a whole here shows that the policy statement drove the court's determination in this case. She didn't talk about doing a variance if necessary to get up to the must that she gave, that she would do a variance if she had made a determination that the range was... She did say that. She did say that at the very end in response to the government's request. But I think that doesn't negate the fact that the vast majority of this sentencing hearing was devoted to the crime of violence issue, the court's belief that it was important, the court's request for analysis and guidance from this court, and again, her only statement about why 18 months, which is the direct middle of the policy statement range, was tied to the policy statement range. I also think it's important that neither party in this case asked for a policy statement range sentence, but the judge stuck to it anyway, which is further indication that the judge considered the policy statement to be the driving factor in her decision. I do want to briefly touch on the government's request that this court affirm on alternative grounds based on the recidivist aspect of grade A violations, wherein if the offense is punishable by more than 20 years, it would also be a grade A violation. I just also want to point again to the plain language of the text, which states that it is an offense punishable by a term of imprisonment exceeding 20 years, again requiring the court to identify a specific federal, state, or local offense and look at its punishment range within the statutory definition. It's also important that the sentencing commission knows how to indicate that a recidivist enhancement should apply, and we can see that in 4B1.1, which is the career offender guideline. That guideline states that the term, offense statutory maximum, means maximum term of imprisonment authorized for the offense of conviction, including any increase in that maximum term under a sentencing enhancement provision that applies because of the defendant's prior criminal record. There is nothing like that in 7B1.1, so clearly, had the sentencing commission intended for all recidivist enhancements, including general recidivist enhancements that are not specific to an offense, they know how to indicate that, and they didn't do so here. Finally, this court has discretion to affirm an alternative grounds, but it's important that the petition here did not allege a grade A violation based on that 20-plus year sentence, and this argument was not made to the district court. So we don't have the benefit of the district court's analysis here, and it's not clear that the court would have given the same sentence had the court known that this was not a crime of violence, but rather it was a grade A violation based on multiple stacked recidivist enhancements that the state had not applied against Mr. Patel. If there are no more questions, I would ask that this court reverse and remand. Thank you, counsel. Mr. McKay. Good morning, Your Honors. Excuse me. Brian McKay on behalf of the United States. Mr. Patel, he hit, he kicked, he strangled a woman so seriously that she went to the hospital and needed stitches. This record proves that whether that conduct was properly labeled as a crime of violence was inconsequential to the sentence that the district court imposed for two independent reasons. First, because he had been previously convicted of assault family violence and also had another statute was imposed. He was subject to a sentence of greater than 20 years. Mr. Patel had an opportunity to respond to that in his reply, he didn't, and nothing that's been argued this morning disproves the applicability of that analysis. But also, we know that that grade, that classification was immaterial because the district court expressly said so. Now, Mr. Patel's argument against this pathway of harmlessness suffers from two principal problems. One, he imports harmlessness standards that this court has applied in original sentencing proceedings and moves them into a revocation setting. We know from the court's decision in the United States Miller, it is a different arena, the revocation setting. But also, sort of compounding that, he also takes from Rico Mejia, meaning that Rico Mejia doesn't have. He argues that it requires an express or particularized statement from the district court of its awareness of the alternative guideline range, but that's not what Rico Mejia held. I've pointed to at least three cases decided after Rico Mejia where the court didn't require it and instead held that there was harmlessness shown by the district court's awareness. It was told of what the alternative guideline range would be, and I know of at least one additional instance since briefing in this case ended where the court has held that. Now, Mr. Patel, under his position, he would say, well, we can draw one of two conclusions from this. Mr. Patel would conclude that the district court, I'm sorry, that this court has over and over and over again violated its rule of orderliness, and that members of this court, including the author of Ibarra Luna, don't understand or haven't faithfully applied harmlessness standards. But I think the more reasonable conclusion to be drawn is that over and over again, the court has found harmlessness without an express or particularized statement because that's not a requirement. That wasn't a holding of Rico Mejia. But even if the court was to hold the government to that standard here, we don't believe that it does apply, but even if the court was to hold the government to that standard here, we could meet that, and we could meet that at pages 121 and 122 of the record where defense counsel explicitly brought to the district court's attention again, Your Honor, but for a grade A violation, he would be looking at a range of 6 to 12 months, and the district court's immediate response, got you. I got you. I hear you. I understand. And at the very next page, when the district court is explaining its reasoning, it says, I believe this is a grade A violation, but even if it wasn't, I would still impose the 18-month sentence, and as Your Honor, Judge Graves had pointed out, and said, I would vary up or I would depart up if I needed to, indicating, corroborating the district court's position of that alternative guideline range. So even if the government is held to that standard of harmlessness here, we could meet that. So your argument regarding harmlessness is based upon that comment as well as the record demonstrating a consideration of grade B guidelines, correct? Yes, Your Honor. Is there anything else in the record that you think supports the harmlessness argument? At page 46 of the record, in the written objections, defense counsel brought to the court's attention that alternative range as well. But in agreeing with that, it's not to the exclusion of the other pathway to harmlessness through another grade A violation based on Texas recidivist statutes. But yes, Your Honor, I think this case is easily decided on harmlessness, that there may be a day where the court has to decide whether categorical approach applies in revocation proceedings, but it's not necessary here. If the court, nonetheless, decides that it wants to wade into that issue that has split the circuits, I just want to emphasize one point, and that is this. I don't believe there's a way to decide that issue that brings complete harmony to the guidelines. Mr. Patel, the First Circuit, the Ninth, and others have chosen a way to try to reconcile. They focus on the incompatibility with saying, well, the commentary says we have a conduct-based approach, but they incorporate this definition that has an elemental approach. I recognize there's incompatibility there, and they seize on that incompatibility, and the First Circuit has tried to reconcile that. But in doing so, I believe they leave open a greater, more serious incompatibility or incongruence. One, as I mentioned in the brief, there's this issue of the sentencing commission said the grade is to be based on the defendant's actual conduct, and yet the way they reconcile it, it's not the defendant's actual conduct, it's the elements of the offenses implicated by the defendant's actual conduct. So there's that inconsistency, but if we look back at the sentencing commission's language in the introductory paragraphs to Chapter 7, a couple of things become evident. There the sentencing commission explained, we deliberately chose not to impose firm guidelines, and the reason that they did that was because they wanted district courts to have greater flexibility in this arena of revocation proceedings. So we see this theme of greater flexibility for district courts. Another thing that's evident, and I think it's most evident in the final paragraphs of Section 3 of the introduction, when they said, and another sort of guiding principle is that more serious violations ought to yield longer sentences. And so we see these two themes, greater flexibility, more serious violations, longer sentences. And so it would be completely incompatible to say, where we want more flexibility and longer sentences for more serious violations, we're going to incorporate the most inflexible aspect of the guidelines, one that often leads to irrational or illogical results where more serious offenses, more serious conduct, don't yield any greater advisory sentences. And so I recognize that there is some incongruence between saying, we're going to focus on conduct, but we're going to use this definition that is elemental, that is focused. I recognize that, but I think knowing that we live with some incongruence, I think the more reasonable reading of all of this together is to say, start with the position that, look, the Sentencing Commission said they wanted flexibility, longer sentences for more serious conduct, and in this guideline explicitly said, the grade should focus on the actual conduct. And so in doing so, we recognize when they incorporated this definition from another part of the guidelines, where there are firm guidelines, in doing so, it is a guidepost for the district court. Did the defendant use, attempt, threaten physical force against someone else? But that, what they intended to do was for the elemental focus to drop away at that point. Is it perfect? It's not perfect, but neither is saying that the Sentencing Commission told us to focus on actual conduct, but what they really meant, and they wanted flexibility, but what they actually did was something that incorporates great inflexibility and is only slightly tethered to actual conduct. Once the court has any questions, I would ask the court to affirm on harmlessness and to cede the rest of my time. Thank you. Your Honor, two points on rebuttal. First, with regard to harmless error, the government suggests that the standards are different because this is a revocation case, and while the standard of review is different, this court has applied the same harmless error standards in revocation cases. One such case is United States v. Bernie, that's 485 Federal Appendix 737 from this court in 2012. Now, I think the most reasonable conclusion for this court's case law, sometimes finding that an inoculation statement does make for harmless error, sometimes finding that it does not, is that there are no magic words. There is not a script that we can give a district court that automatically precludes this court's review of all legal error. Instead, what the great weight of the authority from this court shows is that we need to look at the record as a whole, and what we see in this record is that the district court here thought this was an important legal question, that she tied her sentence to the policy statement range and gave no other indication about the facts of the case or anything else that would render that 18-month sentence, and that she fully expected to get guidance from this court on the crime of violence question. So the great weight of the record here shows that this was not harmless error, but rather the policy statement and the crime of violence arguments drove the court's decision. Second, as to the merits of the categorical approach, the government suggests that the hybrid system affected by most of the circuit courts is incongruent with the guidelines. But in fact, what those circuits have done is the most faithful application of the text. What the courts do is throw out 4B1.2 and not consider it at all, when the Sentencing Commission has specifically told courts to apply that definition and its commentary. There is no response from the government as to the fact that a person can violate supervised release without a conviction, which is why more flexibility would need to be given to district courts to identify an offense in order to apply that 4B1.2 definition. And finally, courts still have flexibility that the Sentencing Commission wanted them to have on revocation, in that they are not married to the policy statement range, and they have flexibility under the 3553A factors. So I would urge this court to find that the categorical approach does apply to 7B1.1, and that the great weight of the record here shows that that error is not harmless in reverse and remand. Thank you.